**Mark BOOZELL, Illinois Director of Insurance, as Liquidator of Reserve Insurance Company, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant/Counter Claimant.**

No. 96 C 6270.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 25, 1997.

William Carlisle Herbert, Hopkins & Sutter, P.C., Chicago, IL, Bradley Earle Riley, Hopkins & Sutter, Chicago, IL, for Plaintiff.

Carole Judith Ryczek, U.S. Attorney's Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This lawsuit involves the liquidation of the Reserve Insurance Company ("Reserve"), an Illinois insurer that has been in state court receivership proceedings since 1979. In this complaint against the United States the Illinois Insurance Commissioner, Mark Boozell ("Boozell"), seeks declaratory relief which he asserts is essential to a fair and orderly liquidation of Reserve. Boozell claims that the general federal priority statute, codified in 31 U.S.C. § 3713, interferes with his agency's administration of Reserve's assets because of the uncertainties created by the federal government's statutory assertion that it can assert priority claims· at any time during the liquidation.

Boozell contends that existing case law establishes that the potential claims of the United States that were contingent on the date of Reserve's liquidation do not fall within the federal priority statute. Boozell also claims that the United States' non-contingent liability claims should be exempted from the federal priority statute, because giving such claims priority would impair the protection that the Illinois liquidation priority statute accords to policyholders of an insolvent insurer and thus violate the McCarran–Ferguson Act, 15 U.S.C. § 1012(b).

Count I of Boozell's complaint seeks to establish that certain of the federal claims against Reserve are not "claims of the United States" within the meaning of the general federal priority statute in 31 U.S.C. § 3713. Count II of his complaint seeks to establish that, in essence, the total liability of the Reserve estate to the federal government does not exceed the amount approved by the state liquidation court for the federal claims, and that the priority of the federal claims in the Reserve proceeding are subject to determination by the state liquidation court.

The United States in turn has filed a two count counterclaim against Boozell, seeking a declaration that the Illinois state priority statute is partially preempted by the federal priority statute, and that the surviving provisions of state law cannot be severed and enforced separately from those held preempted. Alternatively, assuming the state law somehow survives preemption, Count II of the counterclaim asks the Court to rule that the federal claims against the Reserve estate are entitled to payment as

policyholder claims under 215 ILCS 5/205(1)(d).

Presently pending before this Court are the parties' respective cross-motions for summary judgment. After careful evaluation of the pleadings in this matter, this Court requested oral argument from the parties primarily because the Court was concerned about this issues of justiciability in this case. This opinion will proceed to address that issue as well as all of the pending motions presently before this Court.

### RELEVANT FACTS

Reserve was a property and casualty insurance company organized under the laws of Illinois.[1] As a property and casualty insurer, Reserve in general protected its policyholders from loss of property and liability to others arising from certain casualty events, such as automobile accidents. Reserve was licensed to write all lines of property and casualty insurance, and it wrote more than $90 million of such insurance in 1977. (Best's Insurance Reports, Property-Casualty, at 1051–1054 (1978), Boozell Ex. 3; Affidavit of Richard S. Darling ("Darling Affidavit") ¶ 10, Boozell Ex. 1).

On May 29, 1979, the Circuit Court of Cook County, Illinois (the "Liquidation Court"), entered an order of liquidation against Reserve with a finding of insolvency, and the Illinois Director of Insurance was named liquidator of Reserve (the "Liquidator"). (Final Order of Liquidation with a Finding of Insolvency, Darling Affidavit Exhibit A, Boozell Ex. 1). Under the Illinois Insurance Code, the Liquidator was obligated to liquidate the property, business and affairs of Reserve, follow prescribed procedures to identify and value claims against the Reserve estate, and declare dividends on all allowed claims out of the funds in his possession in accordance with priorities established by the Illinois Insurance Code. *See* 215 ILCS 5/193, 5/205, 5/208, 5/209 and 5/210.

### Identifying Claimants

The process of identifying claimants was initiated on May 30, 1979, when the Liquidation Court entered an order establishing a procedure for filing claims against the Reserve estate and setting a deadline of May 1, 1980, by which time claimants were required to file proofs of claim (the "bar date"). (Order Fixing the Time and Procedure for filing Claims against the Reserve Estate, Darling Affidavit Exhibit B, Boozell Ex. 1). In compliance with this order, the Liquidator reviewed Reserve's records to identify potential creditors of Reserve and subsequently sent proof of claim forms to all person thus identified as potential creditors. (Affidavit of Gerald Thompson, Boozell Ex. 4). The Liquidator sent about 500,000 proofs of claim to potential creditors, and about 131,000 proofs of claim were subsequently filed with the Liquidator. (Darling Affidavit ¶ 13, Boozell Ex. 1).

In the years after Reserve was placed in liquidation, the Liquidator pursued claims against certain firms and individuals who were alleged to have contributed to the insolvency of Reserve. *See Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983) (review of Liquidator's claims). Settlements of this litigation in 1991 infused sufficient funds into the Reserve estate to make it certain for the first time that the Reserve estate would have sufficient assets to make distributions other than to pay administrative expenses. The Liquidator thereafter undertook a review of timely filed proofs of claim to identify and value any claims against the Reserve estate at or above the policyholder level of priority. The Liquidator has obtained about $66.4 million in funds to distribute to creditors of the Reserve estate, and he has identified liabilities of the Reserve estate at or above the policyholder priority level totaling about $111.4 million. (Darling Affidavit ¶¶ 14–15, Boozell Ex. 1).

### The United States' Claims

In addition to identifying and evaluating timely filed proofs of claim, the Liquidator

---

1. These facts are drawn from the parties' 12(M) and 12(N) submissions. While the defendant United States has moved to strike certain of plaintiffs' 12(M) statements and related affidavits, after a careful review of the relevant briefs, the Court denies this motion and will give such disputed facts the weight they deserve pursuant to Federal Rules of Evidence.

has undertaken to identify all actual or potential claims of the United States appearing in any filed proofs of claim or in Reserve's claim files. Based on that review, the Liquidator has identified 136 actual or potential claims of the United States. All of these claims were actual or potential "liability claims." (Affidavit of Tanzy Denise Jackson ("Jack Affidavit"), ¶¶ 7–8, Boozell Ex. 5).

Under the Illinois Insurance Code, any person who has a cause of action against an insured under an insurance policy issued by an insurer in liquidation has the right to file a so-called "liability claim" in the liquidation proceeding. 215 ILCS 5/205(1)(d), 5/209(6). Liability claims are entitled to the same priority in distributions of estate assets as claims of policyholders, insured and other persons enforcing policyholder rights. *Id.* at 5/205(1)(d).

Only eight of the 136 identified actual or potential liability claims of the United States are based on causes of action that had accrued as of May 29, 1979, the date when Reserve was placed in liquidation. In the case of the remaining 128 claims, no insured loss had occurred as of May 29, 1979. (Jackson Affidavit ¶¶ 9–10, Boozell Ex. 5). All such actual or potential liability claims were contingent on one or more events occurring, if ever, after the liquidation date.

Timely proofs of claim were filed with respect to seven of the eight non-contingent claims of the United States identified by the Liquidator.[2] Certain of these claims were covered and paid in part by insurance guaranty associations. The Director has recommended to the Liquidation Court that these seven claims be allowed in amounts due after subtracting amounts paid to the United States by the insurance guaranty associations. (Jackson Affidavit ¶ 9, Boozell Ex. 5).

The Illinois Insurance Code allows an insured to file contingent claims in a liquidation proceeding, but it requires that such contingent claims be liquidated on or before a date set by the Liquidation Court. 215 ILCS 5/209(4)(a). The Liquidation Court initially set May 1, 1983, as the final date for the

liquidation of contingent claims against Reserve but extended this date to December 29, 1989. The contingent liability claims of the United State identified by the Liquidator were not liquidated by the final date set by the Liquidation Court. (Darling Affidavit ¶¶ 12, 16, Boozell Ex. 1). Moreover, with respect to each of the 128 identified contingent claims, either a proof of claim was not timely filed, or no proof of claim was ever filed. The Liquidator recommended to the Liquidation Court that these 128 claims be denied. (Jackson Affidavit ¶ 10, Boozell Ex. 5).

In accordance with orders entered by the Liquidation Court, notice of the Liquidator's recommendation were sent to all claimants, including the United States, providing an opportunity to object to the recommendations. The Liquidator did not receive any objections to the recommendations allowing or denying the identified actual or potential claims of the United States. (Jackson Affidavit ¶¶ 11–13, Boozell Ex. 5). The Liquidation Court approved the Liquidator's recommendations with respect to the identified actual and potential claims of the United States. (United States' Responses to Plaintiff's Requests for Admissions ¶ 10–13, Boozell Group Ex. 2).

In the course of the instant lawsuit, Boozell has sought to confirm that the actual and potential claims identified by the Liquidator are all the actual and potential claims of the United States against Reserve presently known to the United States. While the United States does not have any information that would indicate that there are any federal claims other than those identified by the Liquidator, the United States has been unable to confirm that these 136 actual or potential claims are all the claims that the United States has against the Reserve estate. (United States' Responses to Plaintiff's Requests for Admissions ¶ 6, Boozell Group Ex. 2; United States' Responses to the Plaintiff's Interrogatories ¶ 1, Boozell Group Ex. 2; Riley Affidavit ¶¶ 3–5, Boozell Ex. 7). However, the United States only desires to

---

**2.** One of the eight non-contingent claims of the United States identified by the Liquidator was paid in full by the Illinois Insurance Guaranty Fund, and no proof of claim was filed on behalf of the United States. (Jackson Affidavit ¶ 9, Boozell Ex. 5).

proceed with its seven non-contingent claims and has expressly waived its rights to the identified non-contingent claims.

### LEGAL STANDARDS

#### A. Standards in Declaratory Judgment Actions

It is well established that while the Declaratory Judgment Act, 28 U.S.C. § 2201, granted the federal courts discretion to make a declaration, it did not impose a duty to do so. *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962). In determining whether declaratory relief is appropriate, the Court evaluates whether (1) the declaratory judgment will serve a useful purpose in clarifying and settling the legal issues between the parties; and (2) the declaratory judgment will afford relief from uncertainty, insecurity and controversy. *Id.* "It follows then when neither of these results can be accomplished, the court should decline to render the declaration prayed." *Id.*

In order for the Court to issue a declaratory judgment, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937)). "When all is said and done ... 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teaching and experience concerning the functions and extent of federal judicial power.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952)).

#### B. Summary Judgment Standards

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Cincinnati Ins.*

*Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir.1994). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, and draw all reasonable inferences from the evidence in the nonmovant's favor. *Cincinnati Ins.*, 40 F.3d at 150. However, if the evidence is merely colorable, or is not significantly probative, or merely raises 'some metaphysical doubt as to the material facts,' summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 261, 106 S.Ct. at 2516–17; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge when deciding a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

Where cross motions for summary judgment have been submitted, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993). The court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Id.; Buttitta v. City of Chicago*, 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd*, 9 F.3d 1198 (7th Cir. 1993).

### ANALYSIS

#### A. Count One of Plaintiff's Complaint

After a careful evaluation of the parties' briefs and oral argument, this Court has concluded that Count One of Boozell's Complaint does not presently state a case or controversy that mandates this Court's exercise of its discretion to declare whether the

federal priority statute interferes with the Illinois insurance liquidation statute. In the first instance, the only concrete claims that are involved in this claim are 128 contingent federal claims that Boozell has identified in Reserve's liquidation. However, the United States has expressly waived any right to assert these contingent claims during Reserve's liquidation proceeding. This voluntary waiver is valid and is accepted by this Court. *See e.g. Aleutian Constructors v. United States,* 24 Cl.Ct. 372, 384 (1991). Nevertheless, Boozell asserts that he is entitled to a declaratory judgment because the United States may one day assert further unknown claims in the Reserve liquidation. The United States strongly asserts that this future event is too speculative to justify a declaratory judgment in this case. This Court agrees and concludes that Boozell has not met his burden of establishing the need for a declaratory judgment on the waived contingent claims under the circumstances of this case. Given the government's waiver, Boozell has not established a need for this Court to consider his arguments that the long-standing federal priority statute is unconstitutional as written and as applied to Reserve's liquidation. Count One of Boozell's claim is therefore dismissed without prejudice to its refiling upon the United States' assertion of any contingent claim in the Reserve liquidation.[3]

### B. *Count Two of Plaintiff's Complaint and The United States' Counterclaim*

What this case essentially boils down to is Count II of Boozell's complaint, which involves six actual federal claims which total $580.00, and the parties' dispute about whether these claims are entitled to federal priority in view of the McCarran–Ferguson Act. The United States has filed a counterclaim for declaratory relief which seeks a declaration that: (1) the Illinois state priority statute is preempted by the federal priority statute to the extent that the state scheme purports to afford priority treatment to the claims of state law guaranty funds ahead of federal claims and (2) that even if the Illinois state priority statute has not been preempted by federal law, the federal claims are entitled to the priority afforded to policyholders of Reserve.

■ This Court has seriously considered whether the $580.00 in actual claims at issue in Boozell's Count II and the United States' Counterclaim justify discretionary declaratory judgment relief in a situation involving $66.4 million in funds to be distributed to entities asserting over $111.4 million in liabilities. Certainly a strong argument can be made that a mere $580.00 adjustment in claims will not come close to materially impacting Reserve's liquidation. Thus, this Court concludes that it would be well within its discretion to withhold any declaration with respect to the remaining claims in this lawsuit. This resolution would be fully consistent with the Court's ruling with respect to Boozell's Count I.

Yet, the Court is satisfied that a real controversy exists between the parties with respect to the United States' actual claims in this controversy. Therefore, in the interests of justice and judicial economy[4] this Court will squarely address the issues presented in Boozell's Count II and the United States' Counterclaim.

---

3. As will be evident later in this Opinion, the Court has concluded that any federal priority claims in this case must comply with the Illinois Insurance Liquidation Statute pursuant to the McCarran–Ferguson Act. Since it is apparent that the parties may be attempting to use this lawsuit as a "test case" for further appellate proceedings, this Court expressly states that its holdings herein would extend to the federal contingent claims identified by Boozell. Thus, the Court alternatively holds that any contingent claims must comply with the bar dates set by the Liquidation Court. *See* 215 ILCS 5/208 (1). In reaching this alternative holding the Court has rejected Boozell's argument that the contingent federal claims are not covered by the Federal Priority Statute and respectfully declined to follow the case of *Garcia v. Island Program Designer, Inc.,* 4 F.3d 57 (1st Cir.1993) for the reasons set forth at pp. 678–679 of this opinion.

4. The Court does not desire to delay this litigation and, as indicated in our preceding footnote, there exists a high probability that an appeal will follow. Therefore, rather than avoiding a decision on the merits, this Court has concluded that a full analysis and decision on the merits would serve the interests of justice.

This dispute arises from inherent conflicts between the relevant state and federal statutes. The Illinois state insurance liquidation law gives sixth priority to the claims of the federal government after the claims of policyholders, insurance guaranty trust funds and others. 215 ILCS 5/205(1). On the other hand, the federal priority statute always gives first priority to the claims of the United States with respect to a bankrupt debtor's obligations. 31 U.S.C. § 3713. In the face of conflicting statutes, the general rule is that federal law preempts state law. However, the McCarran–Ferguson Act expressly provides an insurance exception to the general federal preemption rule:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(b).

The controversy among the parties is whether the Illinois Insurance Code, which creates claim priority ranks for purposes of liquidation, regulates the "business of insurance." If this issue is answered affirmatively then the Illinois statute survives federal preemption under the McCarran–Ferguson Act.

Our analysis of this issue must begin and end with the Supreme Court's decision in *United States Department of the Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993). In *Fabe*, the Court evaluated separate provisions of a similar Ohio insurance liquidation statute to determine whether federal preemption was appropriate under the McCarran–Ferguson Act. The Court held that an insurance liquidation priority statute regulates the "business of insurance," within the meaning of the McCarran–Ferguson Act, to the extent that the statutory provisions are found to protect insurance policyholders. In particular, the Court held that Ohio may afford priority to the insurance claims of policyholders and to the costs and expenses of administering the liquidation over the claims of the United States. *Id.* at 492, 113 S.Ct. at 2202–04. The Court specifically held: "[t]he Ohio priority statute is designed to carry out the enforcement of insurance contracts by ensuring the payment of policyholders' claims despite the insurance company's intervening bankruptcy. Because it is integrally related to the performance of insurance contracts after bankruptcy, Ohio's law is one 'enacted by any State for the purpose of regulating the business of insurance.'" *Id.* at 502, 113 S.Ct. at 2209. The Court reasoned that "because the Ohio statute is 'aimed at protecting or regulating' the performance of an insurance contract, it follows that it is a law 'enacted for the purpose of regulating the business of insurance,'" within the plain meaning of the McCarran–Ferguson Act. *Id.* at 505, 113 S.Ct. at 2210 (quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 568–69, 21 L.Ed.2d 668 (1969)). The Court expressly noted that its prior opinion in *SEC v. National Securities, Inc.* had observed that statutes which indirectly protected the relationship between the insurer and insured constitute the "business of insurance" within the McCarran–Ferguson Act. *Id.* at 500, 113 S.Ct. at 2207–08.

The *Fabe* Court also held, however, that Ohio would not use the McCarran–Ferguson Act to avoid federal preemption when it attempted to rank other categories of non-policyholder claims above those pressed by the United States. *Id.* at 508, 113 S.Ct. at 2211–12. The Court stated that the general assertion that every preference accorded to the creditors of an insolvent insurer ultimately may be resolved to the benefit of policyholders by enhancing the reliability of the insurance company was too broad based to avoid preemption under the McCarran–Ferguson Act. Thus, the preferences conferred upon employees and other general creditors by Ohio did not escape preemption because their connection to the ultimate aim of insurance was too tenuous. *Id.* at 508, 113 S.Ct. at 2212.

As easily predicted by Justice Kennedy's dissent in *Fabe*, which was joined by Justice Scalia, Souter and Thomas, the application of *Fabe* has been difficult. In fact, the First and the Second Circuit Courts of Appeal have taken different approaches in their application of *Fabe*.

In *Garcia v. Island Program Designer, Inc.,* 4 F.3d 57, 60–62 (1st Cir.1993), Justice Breyer (then Chief Judge of the First Circuit) applied *Fabe* and concluded that 31 U.S.C. § 3713 preempted the Commonwealth of Puerto Rico's insurance liquidation filing deadline and related priority system. Thus, late-filed federal claims were still entitled to priority. Justice Breyer expressly concluded that "[t]he filing deadline was not directed at nor necessary for the protection of insurance policyholders." 4 F.3d at 62.

Justice Breyer concluded that Puerto Rico's filing deadline (with its penalty of subordination for late claims) did not directly regulate policyholders because it was not necessary for their protection. Justice Breyer concluded that "[t]he provision helps policyholders only to the extent that (and in the same way as) it helps all creditors." *Id.* Justice Breyer acknowledged that the absence of a firm deadline would make the liquidator's job more difficult. Nevertheless, he concluded that the liquidation was manageable because the trustees could simply search for potential federal claims and give them first priority even if these claims had not been formally asserted by the United States. *Id.* The *Garcia* court held that relieving the liquidator of the search for federal claims only provided policyholders with an "indirect, speculative benefit of the kind that the *Fabe* Court found far too tenuous to prevent pre-emption." *Id.*

On the other hand, the Second Circuit in *Stephens v. American Intern. Ins. Co.,* 66 F.3d 41 (2nd Cir.1995) applied *Fabe* and found that an anti-arbitration provision in the Kentucky Insurers Rehabilitation and Liquidation Law was enacted "for the purpose of regulating the business of insurance" and was thus preserved by the McCarran–Ferguson Act from preemption by the Federal Arbitration Act. The *Stephens* court found a Kentucky statute, which regulates the liquidation of insurance companies and which renders arbitration clauses unenforceable during liquidation, was critical to the relationship between an insurance company and its poli-

cyholder because both parties know that the insurance company will be liquidated in an orderly fashion in the case of insolvency. The *Stephens* court rejected an overly narrow definition of protecting policyholders: "*Fabe* states that '[s]tatutes aimed at protecting or[5] regulating [the relationship between policyholder and insurer], directly or indirectly, are laws regulating the "business of insurance"' and that any law with the 'end, intention, or aim of adjusting, managing, or controlling the business of insurance' is a law 'enacted for the purpose of regulating the business of insurance.'" *Id.* at 45 (quoting *Fabe,* 508 U.S. at 501, 505, 113 S.Ct. at 2208, 2210) (emphasis in *Stephens;* some internal quotation marks omitted).

With the *Fabe* principles in mind, we proceed to analyze the Illinois Insurance Liquidation Law challenged herein.

The Illinois priority statute provides, in pertinent part:

(1) The priorities of distribution of general assets from the company's estate is to be as follows:

(a) The costs and expenses of administration, including the expenses of the Illinois Guaranty Fund ... and of any similar organization in any other state....

(b) Secured claims, including claims for taxes and debts due the federal or any state or local government, that are secured by liens perfected prior to the filing of the complaint.

(c) Claims for wages actually owing to employees for services rendered within 3 months prior to the date of the filing of the complaint, not exceeding $1,000 to each employee, unless there are federal claims under paragraph (f), then the claims for wages shall have a priority of distribution immediately following that of federal claims under paragraph (f) and immediately preceding claims of general creditors under paragraph (g).

(d) Claims by policyholders, beneficiaries, insureds and liability claims against insureds covered under insurance policies and insurance contracts issued by the com-

---

5. The *Stephens* court distinguished *Garcia* by pointing out that *Garcia's* narrow focus had interchangeably referred to the concepts of "regu-

lation" and "protection" rather than separately considering these two related but separate concepts. *See* 66 F.3d at 45.

pany, and claims of the Illinois Insurance Guaranty Fund ... and any similar organization in another state....

(e) Claims by policyholders, beneficiaries, and insureds, the allowed values of which were determined by estimation under paragraph (b) of subsection (4) of Section 209.

(f) Any other claims due the federal government.

(g) All other claims of general creditors not falling within any other priority under this Section....

(h) Claims of guarantee fund certificate holders, guarantee capital shareholders and surplus note holders.

(i) Proprietary claims of shareholders, members, or other owners.

215 ILCS 5/205(1).

The United States asserts in its counterclaim that the Illinois Liquidation Law conflicts with the federal priority statute by assigning sixth—as opposed to first—priority to non-tax federal claims against insolvent Illinois insurers. In particular, the United States asserts that the Illinois Insurance Liquidation Law violates *Fabe* because it forces policyholders to compete on an equal basis with state guaranty funds for payment of claims. Boozell maintains that the Illinois insurance liquidation priority statute provides a direct benefit to policyholders and therefore is protected from federal preemption pursuant to the McCarran–Ferguson Act.

After a careful review of the relevant pleadings and oral argument, this Court has concluded that the priorities established by the Illinois Insurance Liquidation Act are for the purpose of regulating the business of insurance and therefore the Act is not preempted by the federal priority statute.

The Illinois insurance liquidation priority statute grants priority to guaranty associations at the same level as claims by policyholders and other persons asserting policyholder rights against the insolvent insurer's estate. 215 ILCS 5/205(1)(d). The guaranty association, which operates in most states, is composed of all of the insurers doing business in Illinois.[6] Each insurer contributes to a relevant guaranty association account which permits policyholder losses arising from an insurer insolvency to be spread among insurers doing the specific types of insurance that the insolvent insurer transacted. Losses are spread among insurers according to the volume of premiums that each insurer has received from its policyholders. 215 ILCS 5/537.6, 5/531.06 & 531.09(3)(b). The guaranty association becomes obligated to continue coverage and pay claims to any policyholders of an insolvent insurer. 215 ILCS 5/537.2. In return for these services, the guaranty associations receive a limited priority recovery of assets from the insolvent insurer. Policyholders who receive payments on other benefits from a guaranty association are deemed to have assigned their rights under the covered policies to the association to the extent of the benefits provided. Thereafter, the guaranty association is entitled to the same priority as the policyholders would have had with respect to the assigned claims in distributions from the insolvent insurer's estate. 215 ILCS 5/545(a), (b) and 5/531.08(12). Thus, the guaranty association is designed to protect policyholders of an insolvent insurer.

The Court expressly rejects both Garcia and the United States' narrow reading of *Fabe* in reaching its holding. The *Fabe* holding, as appropriately noted in *Stephens,* is a broader interpretation of the Supreme Court's prior holding in *SEC v. National Securities, Inc.* Thus, the *Fabe* holding attempts to give meaning to the plain wording of the McCarran–Ferguson Act by exempting any state law which directly or indirectly assists policyholders from federal preemption. More importantly, the Seventh Circuit Court of Appeals has indicated a similar willingness to give *Fabe* and *National Securities* a broad, rather than narrow reading, in applying the McCarran–Ferguson Act. *American Deposit Corp. v. Schacht,* 84 F.3d 834, 837–844 (7th Cir.) *cert. denied,* — U.S.—, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996). The Court concludes that the priority scheme es-

---

**6.** The facts related to the guaranty association have been drawn from the affidavit of Bruce W. Clements and other relevant pleadings filed in this case.

tablished by the Illinois Insurance Liquidation Law meets these requirements and is exempt from preemption under the McCarran–Ferguson Act. Therefore, the Court hereby grants Boozell's motion for summary judgment on Count II of his complaint as well as Count I of the United States' Counterclaim.

### Count II of the United States' Counterclaim

In Count II of its Counterclaim the United States claims that it is entitled to policyholder-level priority for its claims in the event the Illinois Insurance Liquidation Law is not preempted by the federal priority law. However, in his answer to Count II of the United States' Counterclaim, Boozell has conceded this point. Thus, since no controversy exists between the parties on this issue, the Court will not exercise its discretion to declare an advisory judgment on this issue. Count II of the United States' Counterclaim is therefore dismissed.

### CONCLUSION

This case presents an interesting battle between federal and state law interests. At oral argument, this Court questioned whether the parties were making a mountain out of a $580.00 molehill. Yet, the Court has concluded that the parties are entitled to some answers to the challenging legal issues presented in this lawsuit. This Court has determined that the Illinois liquidation statute survives federal preemption pursuant to the McCarran–Ferguson Act. The Court has determined that the provisions of the Illinois liquidation statute which conflict with the federal priority act relate to the business of insurance pursuant to the Supreme Court's analysis in *Fabe*. The Court is, of course, mindful that an argument could be made that a combination of: (1) the changed composition of the Supreme Court since *Fabe*; (2) the dissenting opinion in *Fabe*; and (3) Justice Breyer's decision as an appellate judge in *Garcia* compel the conclusion that *Fabe* is no longer the law of the land. However, it is not the role of this Court to overrule a Supreme Court decision which is still valid precedent. Instead, it is the role of this Court to apply controlling Supreme Court precedent while being completely faithful to the rationale of the decision. Moreover, this Court believes, although it is irrelevant, that the *Fabe* majority opinion was correct in its application of the plain wording of the McCarran–Ferguson Act.

For the reasons contained herein, Boozell's pending motion for summary judgment is partially granted and partially denied. The United States' cross-motion for summary judgment is also partially granted and partially denied. The United States is granted summary judgment on Count I of Boozell's complaint. This Court concludes that Count I is moot and it is hereby dismissed without prejudice. Boozell is granted summary judgment on Count II of his complaint and Count I of the United States' Counterclaim. This Court concludes that Count II of the United States' counterclaim is moot and it is hereby dismissed with prejudice.

In view of this Court's holdings, the conditional application of the Insurance Guaranty Association to intervene is hereby denied.

All matters before this Court having been concluded, the Clerk of the Court is hereby instructed to enter a final order consistent with this opinion, pursuant to Fed.R.Civ.P. 58. All parties to bear their own costs.