# United States Court of Appeals

## For the First Circuit

No. 01-2553

LINDA RUTHARDT,
in her official capacity as COMMISSIONER OF INSURANCE
OF THE COMMONWEALTH OF MASSACHUSETTS and PERMANENT RECEIVER OF
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY and AMERICAN
MUTUAL INSURANCE COMPANY OF BOSTON,

Plaintiff,

v.

UNITED STATES OF AMERICA and JOHN ASHCROFT,
in his official capacity as
ATTORNEY GENERAL OF THE UNITED STATES,

Defendants, Appellees.

_____

ALABAMA INSURANCE GUARANTY ASSOCIATION, ET AL.,

Movants, Appellants.

_____

No. 01-2587
No. 01-2668

LINDA RUTHARDT,
in her official capacity as COMMISSIONER OF INSURANCE
OF THE COMMONWEALTH OF MASSACHUSETTS and PERMANENT RECEIVER OF
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY and AMERICAN
MUTUAL INSURANCE COMPANY OF BOSTON,

Plaintiff, Appellant/Cross-Appellee,

v.

UNITED STATES OF AMERICA and JOHN ASHCROFT,
in his official capacity as
ATTORNEY GENERAL OF THE UNITED STATES,

Defendants, Appellees/Cross-Appellants.

_____

ALABAMA INSURANCE GUARANTY ASSOCIATION, ET AL.,

Movants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge

and Greenberg,[*] Senior Circuit Judge.

Joseph C. Tanski with whom Alan J. Cooke, David B. Mack and Hutchins, Wheeler & Dittmar, P.C. were on brief for movants, appellants.

Kathleen A. Kane, Appellate Staff, Civil Division, Department of Justice, with whom Robert D. McCallum, Jr., Assistant Attorney General, Michael J. Sullivan, United States Attorney, and Robert M. Loeb, Appellate Staff, Civil Division, Department of Justice, were on brief for defendants, appellees.

Thomas A. Barnico, Assistant Attorney General, Government Bureau, with whom Thomas F. Reilly, Attorney General, J. David Leslie and Eric A. Smith, Special Assistant Attorneys General, Rackemann, Sawyer & Brewster were on brief for plaintiff, appellant/cross-appellee.

Joseph C. Tanski, Alan J. Cooke, David B. Mack and Hutchins, Wheeler & Dittmar, P.C. on brief for Insurance Guaranty Funds, Amicus Curiae.

Rowe W. Snider, Steven T. Whitmer and Lord Bissell & Brook on brief for National Conference of Insurance Guaranty Funds, Amicus Curiae.

Joel A. Glover, Franklin D. O'Loughlin, Rothgerber Johnson & Lyons LLP, Joseph F. Ryan and Lyne Woodworth & Evarts LLP on brief for National Organization of Life and Health Insurance Guaranty Associations, Amicus Curiae.

Kathleen A. Kane, Appellate Staff, Civil Division, Department of Justice, with whom Robert D. McCallum, Jr., Assistant Attorney General, Michael J. Sullivan, United States Attorney, and Robert M. Loeb, Appellate Staff, Civil Division, Department of Justice, were on brief for defendants, appellees/cross-appellants.

September 18, 2002

[*]Of the Third Circuit, sitting by designation.

BOUDIN, Chief Judge.  On these appeals, plaintiff the Massachusetts Commissioner of Insurance ("the Commissioner") argues that--under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. (2000)--two provisions of state law govern claims by the United States in a state insurance company liquidation proceeding.  The district court said yes as to one issue (claims priority) and no as to the other (bar date).  We agree.

On March 9, 1989, a Massachusetts state court determined that two Massachusetts insurance companies (collectively, "American Mutual") were insolvent.  The court then appointed the Commissioner as permanent receiver to conduct their liquidation.  On March 22, 1989, in accordance with state law, the court entered an order requiring all creditors of American Mutual to file proofs of claim with the receiver within one year of the liquidation date (i.e., by March 9, 1990).  See Mass. Gen. Laws ch. 175, § 180F (2000); In re Liquidation of Am. Mut. Liab. Ins. Co., 747 N.E.2d 1215, 1219 (Mass. 2001).

Agencies of the United States eventually filed claims against the two insurance companies totaling over $640,000.  Some of the claims were filed after the one-year deadline; these late-filed claims comprised $140 claimed by the late Interstate Commerce Commission and $69,865 claimed by Medicare contractors.  The United States has asserted throughout that all of its claims are entitled to priority over claims of the so-called "guaranty funds" and that the one-year bar date does not apply to any of its claims.

-3-

Virtually all states have set up insurance guaranty funds to protect policyholders if and when insurance companies go bankrupt. Although the extent of coverage varies, in general covered claims by policyholders against an insolvent insurer are paid by the fund. The fund in turn acquires and can enforce (the legal phrase is "subrogated to") the insured's claim against the insurer assets held by the receiver. <u>See, e.g.</u>, Mass. Gen. Laws ch. 175D, § 8(1) (2000). American Mutual did business in a number of states, and payments (as of September 2000) by guaranty funds in 46 jurisdictions to policyholders of American Mutual totaled over $650 million.

After making a number of partial payments to the guaranty funds--which are the largest creditors in the liquidation--the Commissioner on May 14, 1999, filed a liquidation plan in state court. The plan proposes to distribute remaining American Mutual assets as provided under Massachusetts law: pertinently, first priority is for administrative claims; second, for policyholder claims including subrogated claims made by guaranty funds; third, for unearned premiums; and fourth, for non-policyholder claims of the United States. Mass. Gen. Laws ch. 175, § 180F.

The American Mutual assets held by the receiver do not suffice to cover all claims. The United States, which had consented to earlier distributions, insisted that as a matter of federal law its priority trumped that of the guaranty funds and also that the one-year bar date could not be applied to its late-

filed claims. In response, the Commissioner, who can be held personally liable under federal law for ignoring proper claims of the United States, 31 U.S.C. § 3713(b) (2000), brought the present declaratory judgment action in the district court to settle the two issues.

Various guaranty funds from Massachusetts and other jurisdictions[1] sought to intervene; the district court denied them intervenor status but allowed them to file amicus briefs. On cross motions for summary judgment, the district court determined that, by "reverse preemption," the McCarran-Ferguson Act allowed state law to override otherwise applicable federal law, thus according the guaranty funds priority over the United States as to subrogated policyholder claims. Ruthardt v. United States, 164 F. Supp. 2d 232, 241 (D. Mass. 2001). Conversely, relying on a prior decision of this court, the district court held that the United States was not bound by Massachusetts law's one-year requirement for filing claims. Id. at 244-45.

The United States now appeals to contest the priority ruling. The Commissioner cross-appeals as to the time bar ruling. The guaranty funds appeal from the denial of intervention. For reasons that will become apparent, the important open issue on these appeals, which is subject to de novo review, Euromotion, Inc.

---

[1]The states represented by the guaranty funds are Alabama, California, Connecticut, the District of Columbia, Illinois, Louisiana, Maine, Massachusetts, Missouri, Nebraska, Nevada, New Hampshire, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and Virginia.

v. <u>BMW of N. Am., Inc.</u>, 136 F.3d 866, 869 (1st Cir. 1998), concerns the United States' claim to priority over the guaranty funds.

<u>Claims Priority</u>.  The priority issue is framed by several statutes.  The first is the Federal Priority Act, 31 U.S.C. § 3713 (2000), which gives first priority ("shall be paid first") to the United States for its claims against, <u>inter alia</u>, an insolvent entity's estate.  By express qualification, this provision does not apply to Bankruptcy Code proceedings, <u>id.</u> § 3713(a)(2), but this qualification does not extend to state proceedings to liquidate insurance companies.

Instead, to preserve state priorities, the Commissioner relies upon the McCarran-Ferguson Act, which as amended provides as follows (the critical language is underscored):

> Section 1.  Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.
>
> Section 2.
> (a) State regulation
>
> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) Federal regulation
>
> <u>No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance,</u> or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act,

-6-

and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State Law.

15 U.S.C. §§ 1011-12 (emphasis added).

The statute's origins are familiar. In <u>United States</u> v. <u>South-Eastern Underwriters Ass'n</u>, 322 U.S. 533 (1944), the Supreme Court held that insurance, hitherto regulated by the states as a local activity, fell within the Commerce Clause and was therefore subject to federal antitrust regulation. Congress responded with the McCarran-Ferguson Act. The provision of primary interest here--the underscored language of section 2(b)--immunizes against federal statutory preemption those state statutes enacted "for the purpose of regulating the business of insurance."[2]

Unsurprisingly, the Commissioner argues that the quoted language embraces the Massachusetts priority statute insofar as it prefers the claims of guaranty funds arising out of their payments to policyholders. Put differently, the Commissioner says that the quoted language means that the Federal Priority Act does not "supercede" this facet of the priority statute. In shorthand, this

---

[2]Section 2(a) of the statute effectively safeguards state insurance regulation against preemption through the dormant Commerce Clause doctrine. In section 2(b), Congress intended to protect state regulation against federal statutory preemption, but it added two limitations: state regulation is not protected where Congress enacts a statute that "specifically relates to the business of insurance"; and, in addition, the federal antitrust laws apply to insurance companies "to the extent that [the business of insurance] is not regulated by State Law." Neither limitation is at issue here.

can be called "reverse preemption"--of federal law by state law--by Congress' consent.

If the McCarran-Ferguson Act were read in lay terms, the Commissioner would easily prevail. In ordinary usage, the liquidation of American Mutual was surely part of the state's regulation of the insurance business; and, as we will see, the Massachusetts statute according priority (over the United States) to guaranty funds for their subrogated claims is part of a scheme directed to protecting policyholders by assuring prompt and full payment of covered claims. But the Supreme Court has read the exemption more narrowly than literally, making this an extremely close case.

Suffice it to say that the narrowing has been based in part on legislative history and in part on policy concerns. One special policy concern relates to a desire to assure antitrust enforcement; but even when antitrust is not at issue the Court has in general read "business of insurance" restrictively, focusing on the insurance contract and the protection of policyholders. See Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982). Other insurance-related regulation or activities have also been deemed outside the protection of the McCarran-Ferguson Act. The leading cases include Pireno, Group Life & Health Insurance Co. v. Royal Drug Co., 440 U.S. 205 (1979), SEC v. National Securities,

-8-

Inc., 393 U.S. 453 (1969), and United States Department of Treasury v. Fabe, 508 U.S. 491 (1993).[3]

Fabe dealt directly with the question whether the Federal Priority Act superceded a state statute governing priorities in insurance company liquidation. There, the Ohio statute in question assigned all government claims a lower priority than, inter alia, administration expenses, employee claims for wages due, policyholder claims, and the claims of non-governmental creditors. By a five-to-four vote, the Supreme Court upheld the priority for policyholders and for administrative expenses, the latter on the ground that they were essential for the liquidation and therefore for policyholders' receipt of payments. Fabe, 508 U.S. at 493, 508-09.

But so far as the Ohio statute gave priority to employee and general creditor claims, Fabe held that the McCarran-Ferguson Act did not protect the statute "because their [the employee and creditor claims] connection to the ultimate aim of insurance [was] too tenuous," 508 U.S. at 509; and accordingly, the Federal Priority Act did give the United States priority ahead of those two classes. Four dissenting justices thought that the liquidation statute in its entirety failed to qualify as regulation of the

---

[3]Pireno, 458 U.S. at 130 (use of peer review committee to assess reasonableness of chiropractic services not part of the business of insurance); Royal Drug Co., 440 U.S. at 213-14 (insurer's agreement with participating pharmacies to provide benefits to policyholders not part of the business of insurance); Nat'l Sec., 393 U.S. at 460 (state law regulating merger of insurers not part of the business of insurance). Fabe is discussed immediately below.

-9-

business of insurance and that the United States had priority over all claims.  Id. at 517 (Kennedy, J., dissenting).

If and when the next case reaches the Supreme Court, the dissenting position in Fabe could prevail.  That position may be closer to the mainstream of prior Court cases on the McCarran-Ferguson Act and, anyway, all four Fabe dissenters still sit while two of the Fabe majority have left the bench.  But for now the premises of the Fabe majority govern lower courts, see State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("[I]t is this [Supreme] Court's prerogative alone to overrule one of its precedents."), so for us the only question is where those premises lead.  Unfortunately, answering that question is difficult because our own case is very close to Fabe but arguably a small step beyond.

Prior to Fabe, the touchstone of McCarran-Ferguson protection was the insurer-insured contract.  Fabe deemed the Ohio liquidation provisions, so far as they gave priority for payment to policyholders out of the defunct insurer's assets, to be close enough to enforcement of the original contract to qualify for McCarran-Ferguson  protection.  The Court also upheld a priority for administrative expenses as necessary to assure policyholder payments, but held invalid (as against the Federal Priority Act) the state priority for payments for past wages of company employees and payments to creditors other than policyholders.

Strictly speaking, the priority that Massachusetts gives to guaranty funds is not absolutely "necessary"--from a short-term

-10-

perspective--to assure payment by the funds to policyholders.  If the "necessity" test were met, then Fabe would clearly resolve the matter in favor of the Commissioner.  But the obligations of the guaranty funds to pay covered policy claims exists whether or not the guaranty funds are then reimbursed; direct assessments against the insurers will be increased to cover the gap.  Similarly, the state priority for guaranty funds gives the funds, not policyholders, a priority over the United States.  To this extent, the guaranty funds might appear to resemble general creditors who under Fabe did not get priority over the United States.

This perspective is too narrow.  Fabe's premise was not that priority (over the United States) for policyholders is all right and priority for anyone else is not; Fabe itself upheld a priority for administrative expenses of liquidation (and apparently for administrative expenses of guaranty funds, too, see 508 U.S. at 495 n.2) because these reimbursements facilitated payment to policyholders.  In other words, priorities that indirectly assure that policyholders get what they were promised can also trigger McCarran-Ferguson protection; the question is one of degree, not of kind.  See id. at 509 (upholding administrative expenses as "reasonably necessary" and striking down general creditor claims as "too tenuous[ly]" connected).

The priority that Massachusetts affords to guaranty funds is part and parcel of an integrated regime aimed at the protection of policyholders.  Reimbursements to the funds are a significant source of revenue for making covered payments to policyholders; for

-11-

example, as of September 15, 2000, such payments to the guaranty funds financed approximately forty-six percent of the payments to policyholders in the American Mutual liquidation.  Without the priority for such reimbursements, payments to policyholders could in practice be less secure and would at the very least be delayed in some instances.  Prompt payment is one of the main benefits of guaranty funds.

That policyholders benefit from a state regulation is not automatically enough to assure it McCarran-Ferguson protection. Merely reducing insurer costs (through low cost purchasing or peer review schemes) may benefit policyholders in the long run, but the connection may be too remote.  See, e.g., Pireno, 458 U.S. at 130; Royal Drug, 440 U.S. at 213-14.  But, as already noted, the issue is one of directness and degree.  Here, we are concerned with funding payment of promised benefits to policyholders, and payment of benefit to policyholders is just what Fabe said is within the general ambit of the McCarran-Ferguson Act.

The United States concedes that, under Fabe, the policyholders have priority over its own claims.  Yet the guaranty funds are little more than a mechanism for advancing the money to pay policyholders promptly and then recovering those advances out of the estate assets, ahead of the United States, just as the policyholders could have done directly.  If the state statutes had described the fund payments as merely loans, conditioned on the policyholders advancing their own priority claims to repay the loans, the United States would lose.

-12-

It thus becomes apparent that the United States is using the Federal Priority Act not to maintain its priority but to enlarge it. If the policyholder makes a direct claim against the estate, that claim is satisfied out of estate assets _ahead_ of the United States. If (for speed and certainty) the policyholder is instead paid by the guaranty fund, and the guaranty fund then seeks to recoup, the United States' position in this case would mean that the same assets of the estate are subject to a priority claim of the United States. This would be a perverse result.

Of course, if Congress directed such a result, it would be the job of courts to enforce it. But the interplay of the Federal Priority Act and the McCarran-Ferguson Act is assuredly something about which Congress thought little. The ironing of such wrinkles, as with many such statutes, has been left to the courts. _Fabe_, which is just such a judicial construct, may not literally dictate the outcome here; but, all things considered, upholding the priority of the funds is consistent with the logic and spirit of _Fabe_.

The United States makes three arguments for an outcome in its favor. The best grounded is its claim that the state priority for guaranty funds does not easily satisfy the Supreme Court's pre-_Fabe_ criteria for identifying the "business of insurance"; in particular, the state priority does not directly regulate the insurance contract between insurer and insured, previously invoked by the Court as a touchstone. That is so, but that was equally true of _Fabe_'s priority for administrative expenses and perhaps

-13-

even its priority for policyholder claims against the defunct insurer. If such priorities were close enough in <u>Fabe</u> to satisfy the old criteria, they have to be close enough for us.

The second argument is that whether the fund is repaid ahead of the United States has nothing to do with protecting policyholders but is simply a benefit for the insurance industry. This is at most a half truth, and the half that is true does not matter. Yes, the industry will be better off if the funds have a priority since direct assessments against the industry will be less. But the priority for the funds primarily provides adequate resources for a payment scheme whose central mission is to achieve prompt payment for policyholders of what their insurance policies promised them.

The final argument, admittedly inventive, is that some policyholders will be worse off if the guaranty funds get their state-law priority: if the funds' state law priority is upheld, they will compete for estate assets with policyholder claims that are not covered by fund protection;[4] but, if the priority is struck down, those same assets (after liquidation expenses) will all be available first for uncovered policyholder claims, after which the United States will come in ahead of the guaranty funds. Not amused

---

[4]In general, guaranty funds do not "guarantee" the payment of all claims. In Massachusetts, only certain "covered claims" are eligible for payment, and coverage is usually limited to a $300,000 cap except in the case of workers' compensation claims (where there is no cap). Mass. Gen. Laws ch. 175D, §§ 1(2), 5(1)(a) (2000). "Uncovered claims" therefore include both claims that are ineligible for guaranty fund protection in their entirety, and the portion of eligible claims that exceeds the dollar cap.

by this attempt of the United States to pose as a friend of the policyholders, the district court called this argument "specious." Ruthardt, 164 F. Supp. 2d at 240.

It is not quite that. The district court's point was that "[i]n the absence of guaranty funds," the policyholders' covered claims would compete with uncovered claims for the same estate assets; substituting the guaranty funds' claims for the policyholder claims paid off by guaranty funds leaves the uncovered policyholder claims with exactly the same assets to divide--and, in addition, gives the covered claims the benefit of speedy and assured payment which would not exist without the guaranty fund scheme. This is all true but it rests on the district court's own "in the absence" predicate.

The argument of the United States depends not on looking at the scheme as a whole (and contrasting its absence) but with comparing the existing scheme, in the short run, first with and then without a priority for the funds. Even on this basis, it is not clear that matters would work out as the United States supposes.[5] In any event, the short-run perspective is inadequate: the guaranty fund scheme, which protects policyholders, is itself heavily dependent in a practical sense on priority reimbursement

---

[5]If the intended priority for guaranty funds over the United States were forbidden, a Massachusetts court might well read state law to treat subrogated claims by the funds as claims of the policyholder: a departure from the wording of the statute but true to its aim. The United States would then have to argue that this recasting of claims also violates the Federal Priority Act--a hurdle it might or might not be able to leap.

out of the estate assets.  A clever argument cannot overcome this reality.

The time bar.  This brings us to the second major issue in this case.  As already explained, the United States filed a number of claims against the estate, some of which were filed after the one-year state deadline for claims in the liquidation proceeding.  Regarding itself as bound by a prior First Circuit precedent, the district court held that this deadline was not binding on the United States.  On cross appeal the Commissioner asks us to reexamine this precedent and to hold that the McCarran-Ferguson Act protects the one-year deadline.

A word of background will be helpful.  The Supreme Court long ago held that (presumptively) claims of the United States as sovereign cannot be defeated by state statutes of limitations.  United States v. Summerlin, 310 U.S. 414, 417 (1940).  We say "presumptively" because Congress can provide otherwise.  The Commissioner's position is that the McCarran-Ferguson Act does make the Massachusetts deadline apply to claims of the United States because that deadline, like the priority provision protecting guaranty funds, is "for the purpose of regulating the business of insurance."

This is certainly so in the lay sense of the phrase but, in Garcia v. Island Program Designer, Inc., 4 F.3d 57 (1st Cir. 1993), we held that it was not so in the specialized sense that the phrase is used in the McCarran-Ferguson Act, even with the gloss of Fabe.  Dealing with a counterpart deadline--Garcia involved a

-16-

Puerto Rico statute governing insurance company liquidations--then-Chief Judge Breyer ruled that the deadline was "neither directed at, nor necessary for, the protection of policyholders . . . . The provision helps policyholders only to the extent that (and in the same way as) it helps all creditors." Id. at 62.

We are bound by Garcia which can be overturned only by this court sitting en banc. United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir.), cert. denied, 502 U.S. 969 (1991). The Commissioner argues--perhaps overargues--that a few courts elsewhere have not agreed with Garcia,[6] but it would require more than that for the panel to overturn Garcia. See Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir.), cert. denied, 516 U.S. 807 (1995). She also argues that we have sub silentio overturned Garcia by failing to cite it in other cases where it could have been invoked; but a review of the cases shows that in one instance only private claims were at issue and the other cases protected the claims of the United States on other grounds.[7]

---

[6]The Commissioner primarily relies on Munich American Reinsurance Co. v. Crawford, 141 F.3d 585 (5th Cir.), cert. denied, 525 U.S. 1016 (1998); Stephens v. American International Insurance Co., 66 F.3d 41 (2d Cir. 1995); Boozell v. United States, 979 F. Supp. 670 (N.D. Ill. 1997); Clark v. Blue Cross Blue Shield of West Virginia, Inc., 510 S.E.2d 764 (W. Va. 1998). Of these, only Clark, id. at 785-86, and Boozell, 979 F. Supp. at 677-79, directly criticized Garcia. Stephens cited Garcia with apparent approval on a related point, 66 F.3d at 45, while Crawford merely noted a potential difference in approach between Stephens and Garcia, 141 F.3d at 592. In addition, Davister Corp. v. United Republic Life Ins. Co., 152 F.3d 1277, 1281 n.5 (10th Cir. 1998), also approvingly cited Garcia.

[7]See Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente, 125 F.3d 9 (1st Cir. 1997) (upholding a Puerto Rican bar date with respect to private policyholders);

-17-

Nevertheless, it is useful to say a word about Garcia, partly to stress that it is consistent with the view we take of Fabe in the present case.  Conceptually, Fabe draws the line at state law that focuses protection on policyholder claims, either directly or indirectly (where the connection is strong, as with the priority for the subrogated claims).  508 U.S. at 508-09.  An early bar date for United States claims has only a limited effect on policyholders--who have priority anyway--and equally or primarily helps other general creditors.

Thus, Garcia correctly applied Fabe.  The problem with letting the United States file late claims is not that this is at odds with the McCarran-Ferguson Act.  Rather, giving the United States an open-ended exemption from deadlines is (in the liquidation context) simply terrible public policy and was almost certainly not the result of any considered judgment by Congress. Given the connection of the problem with the efficient conduct of judicial proceedings (i.e., liquidation), we think it may be useful to Congress for us to explain briefly why the policy ought to be reconsidered.

Because of the Federal Priority Act, the defunct insurance company cannot be fully liquidated, and its assets fully distributed, until all claims of the United States are satisfied to

United States v. R.I. Insurers' Insolvency Fund, 80 F.3d 616 (1st Cir. 1996) (holding that the Medicare Secondary Payer provision specifically related to insurance and trumped McCarran-Ferguson reverse preemption);  Villafane-Neriz v. FDIC, 75 F.3d 727 (1st Cir. 1996) (holding that the federal statute drawn in question did not impair state law, thus avoiding McCarran-Ferguson reverse preemption).

-18-

the extent that remaining assets permit.  If there is no deadline for United States' claims, the Commissioner--who is personally liable for ignoring the Federal Priority Act, 31 U.S.C. § 3713(b)--cannot ever pay off creditors with lower priorities, unless she can wrangle a waiver from the United States.  No doubt the United States may give a waiver but here, even after a decade, a final waiver has not been provided.  True, too, the United States is likely limited as to some of its claims by a patchwork of federal statutes of limitations; but they vary from claim to claim.  E.g., 28 U.S.C. § 2415 (2000) (general six-year statute of limitations for contract-based actions for money damages brought by the United States); 26 U.S.C. § 6501 (2000) (three-year statute of limitations on income taxes).  In a complicated liquidation, understandably the Commissioner is loath to rely on such statutes--particularly because she does not know exactly what claims the United States has so far failed to discover and assert.  Some uniform limit is plainly needed.

Congress could easily fix the problem, as it has already done for ordinary bankruptcies.  31 U.S.C. § 3713(a)(2) (excepting Title 11 from the Federal Priority Statute); 11 U.S.C. § 502(b)(9) (2000); Fed. R. Bankr. P. 3002(c)(1).  But this is a matter for the legislature, not the courts.  Among other reasons, the optimal answer might well be something other than letting each state fix its own quite short limit for federal claims.  The United States, with its vast array of agencies and activities, might well deserve

more than one year, cf. Fed R. App. P. 4(a)(1)(A), (B), but it does not need forever.

In our view, the two state and district court cases that do disagree with Garcia are not persuasive in their reasoning. See Boozell, 979 F. Supp. at 677-78; Clark, 510 S.E.2d at 785-86. Rather, they implicitly reflect the pressure created where the conduct of an already complicated state proceeding is further complicated by a seemingly unlimited in time (and therefore irrational) veto possessed by the United States. If the Department of Justice cannot find time to draft a proper amendment, it will simply encourage judicial self-help, however misguided that may be.

Intervention. Finally, we consider the questions raised by the would-be intervenors, a number of state guaranty funds who were denied intervention by the district court and now appeal from that ruling. Regardless of whether review might have been sought earlier, it is well settled that the final judgment brings up intermediate rulings such as rulings on intervention. See, e.g., Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 375-77 (1987) (noting the right of would-be intervenors to appeal from an adverse final judgment). We sustain the district court's rulings but permit intervention at this time and in this court on a going-forward basis.

The would-be intervenors unquestionably have an enormous practical stake in this case. The guaranty funds are liable, under their own state laws, to reimburse numerous policyholders of American Mutual who bought policies in their respective states.

-20-

Similarly their priority in claiming Massachusetts assets of the estate depends on whether the Commissioner or the United States prevails on these appeals.

Thus, the would-be intervenors meet the first two requirements for intervention as of right: an interest in the matter in controversy and a practical threat to that interest. Fed. R. Civ. P. 24(a)(2). The difficulty is the qualification: "unless the applicant's interest is adequately represented by existing parties." Id. The district court found that the interests of the guaranty funds were adequately represented by the Commissioner whose position on the priority and time bar issues is the same.

Adequacy is presumed, although rebuttably so, where a government agency is the representative party. See Pub. Serv. Co. v. Patch, 136 F.3d 197, 207 (1st Cir. 1998) (requiring a "strong affirmative showing" that the agency is not adequately representing the would-be intervenor's interests). The guaranty funds argue that the Commissioner is acting primarily in a private or personal capacity, given the threat of personal liability under the Federal Priority Act. But even if this were a pertinent distinction, which is open to doubt, it would not govern here: the Commissioner has a pertinent governmental interest in defending state statutes that benefit Massachusetts policyholders.

No concrete reason is suggested why the Commissioner's representation is inadequate and, in fact, the common position of the guaranty funds and the Commissioner has been ably presented.

-21-

Thus, intervention as of right was properly denied. The district court could, of course, have permitted permissive intervention but its discretion on that score is great. <u>Daggett</u> v. <u>Comm'n on Governmental Ethics & Election Practices</u>, 172 F.3d 104, 113 (1st Cir. 1999). There is no basis for saying it was abused, especially where the issues were legal and amici briefs were permitted.

The would-be intervenors candidly admit that their present concern is with the future. Rehearing en banc might be sought as to <u>Garcia</u> and the possibility exists of Supreme Court review. Given the magnitude of the stakes and the helpful advocacy the funds have provided to us, we choose in these unusual circumstances to exercise our own discretion to allow the guaranty funds to intervene in the case at this time on a going forward basis. <u>Cf.</u> <u>Daggett</u>, 172 F.3d at 112.

For the reasons stated, the decision of the district court is <u>affirmed.</u> The alternative request of the guaranty funds to intervene in this case is <u>granted</u> as of the release date of this decision. Each side shall bear its own costs in this court.

<u>It is so ordered.</u>