**Linda RUTHARDT, in Her Official Capacity as Commissioner of Insurance of the Commonwealth of Massachusetts and Permanent Receiver of American Mutual Liability Insurance Company and American Mutual Insurance Company of Boston, Plaintiff,**

v.

**UNITED STATES of America, and John Ashcroft in His Official Capacity as Attorney General of the United States, Defendants.**

**No. CIV. A. 00–12417–DPW.**

United States District Court,
D. Massachusetts.

Sept. 27, 2001.

234

Thomas A. Barnico, Attorney General's Office, Eric A. Smith, J. David Leslie, Rackemann, Sawyer & Brewster, Boston, MA, for Plaintiff.

Barbara Healy Smith, U.S. Attorney's Office, Boston, MA, Bridget Niland, U.S. Department of Justice, Civil Division, Mat-

thew J. Fader, U.S. Department of Justice, Washington, DC, for Defendants.

Joseph F. Ryan, Lyne, Woodworth & Evarts, Boston, MA, Franklin D. O'Loughlin, Joel A. Glover, Rothgerber Johnson & Lyons LLP, Denver, CO, for Amicus.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The Massachusetts Commissioner of Insurance, who has been appointed under Massachusetts law to serve as the Permanent Receiver of two insolvent insurance companies (the "Receiver"), brings this declaratory judgment action seeking to establish that the general federal claim priority statute, 31 U.S.C. § 3713, does not preempt certain provisions of the Massachusetts statute governing the priority of claims for insurance liquidation proceedings, Mass. Gen. Laws ch. 175 §§ 180A–180L. Specifically, the Receiver requests a declaration (A) in Count II, that she may pay the claims of insurance guaranty funds prior to non-policyholder claims by the federal government and (B) in Count I, that federal government claims are subject to the March 9, 1990 filing deadline set by the state receivership court.

The parties[1] have filed dispositive motions[2] that turn upon the anti-preemption presumption of the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., which provides that

> No Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).

## I. BACKGROUND

### A. The Parties

American Mutual Liability Insurance Company ("AMLICO") and American Mutual Insurance Company of Boston ("AMI") (collectively "the Companies") are mutual insurance companies organized and existing under the laws of the Commonwealth of Massachusetts. The Companies primarily wrote workers' compensation, general liability, and automobile lines of insurance for both commercial and personal policyholders.

Linda Ruthardt is the Commissioner of Insurance for the Commonwealth of Massachusetts. In this capacity, she serves as the Permanent Receiver of the Companies.[3] As receiver, the Commissioner has exclusive authority to recover all assets of the Companies.

---

**1.** I have permitted a number of state insurance guaranty funds, who sought intervention in support of the Receiver, to participate in this litigation as amicus curiae. The National Organization of Life and Health Insurance Guaranty Associations was also granted leave to file an amicus brief. I will, however, decline the request of these guaranty funds for formal intervention before entry of judgment, for the reasons set forth in Section IV, *infra*.

**2.** The Receiver has chosen to proceed by a motion for summary judgment, bringing to my attention certain factual matters, which do not appear to be disputed, beyond the pleadings. The United States, contending that the issues are essentially questions of law

adequately framed by the complaint, has chosen to proceed by motion to dismiss. Because I have considered, with the knowledge of the parties, materials beyond the pleadings—including submissions by the proposed intervenors—I will dispose of this case by summary judgment.

**3.** At the time the liquidation order was issued, Roger Singer was Commissioner of Insurance. When Linda Ruthardt was appointed Commissioner of Insurance, she was substituted as Receiver of the Companies by an order of the receivership court on September 3, 1993.

## B. Guaranty Funds

Every state has an insurance guaranty fund to provide protection for insureds and claimants residing in that state in case of insurer insolvency. A guaranty fund is an association of all insurers licensed to transact business in the state of the guaranty fund.

In the event that an insurer becomes insolvent, guaranty funds become obligated to pay claims covered by the insurer's property and casualty insurance policies. Only covered claims are paid by guaranty funds; the funds do not pay non-policy claims or general creditor claims. The funds pay each covered claim up to the lesser of policy limits or a specified dollar cap (excepting workers' compensation claims, which are not capped). The dollar cap for most funds is $300,000.

In order to pay the claims of an insolvent insurer, each guaranty fund assesses its member insurers. Insurers recover assessments through higher insurance rates and premiums, and in certain states through premium tax offsets or policy surcharges.

Guaranty funds also may pursue recoveries against the estates of insolvent insurers, which reduces the need for assessments on member insurers and thus the need for increased rates and premiums. Any policyholder recovering from a guaranty fund is deemed to have assigned to the fund her right to recover from the insolvent insurer's assets, as well as the priority status she would have had without the guaranty fund. Massachusetts law provides that in a state liquidation proceeding, the claims of guaranty funds are afforded a priority equal to policyholders and ahead of non-policyholder claims by the United States government. Mass. Gen. Laws ch. 175 § 180F.

## C. Factual History

On March 9, 1989, the Supreme Judicial Court for Suffolk County entered an order of liquidation declaring the Companies insolvent and placing them into receivership. The court appointed the Commissioner of Insurance as Permanent Receiver of the Companies.

As a result of the entry of the liquidation order, claims under the Companies' insurance policies with occurrence dates prior to December 31, 1987 were transferred to the Massachusetts Insurers Insolvency Fund ("MIIF") and other state guaranty funds. All claims under residual market policies and all Massachusetts automobile claims were transferred to guaranty funds regardless of the occurrence date. MIIF and other state guaranty funds have made payments on covered claims under the Companies' insurance policies totaling a reported $673,977,022.[4]

As authorized by Mass. Gen. Laws ch. 175 § 180F,[5] on March 22, 1989, the receivership court entered an order requiring the Companies' creditors to file their claims with the Receiver by March 9, 1990. Approximately 37,000 claims were filed by that date.[6] Various federal agencies submitted claims, both before and after the

---

4. Altogether, fifty-one property-casualty guaranty funds in forty-six jurisdictions have sought reimbursement for payments made on covered claims under the Companies' insurance policies.

5. Mass. Gen. Laws ch. 175 § 180F provides, in pertinent part, that all claims in any liquidation proceeding "shall be filed on or before

the last date fixed by the court for the filing of claims in the domiciliary proceeding."

6. Of these 37,000 claims, 7,167 were workers' compensation claims, 4,614 were claims under other types of policies, and 10,628 were claims for return of unearned premium on policies canceled because of the liquidation.

March 9, 1990 bar date, totaling $636,742 against AMLICO and $5,740 against AMI.[7]

Pursuant to the Early Access Distribution Plan approved by the receivership court on June 22, 1993, four distributions totaling $173,971,732 have been made to eligible insurance guaranty funds in partial reimbursement of their claims against estate assets.[8] On June 1, 1999, the court approved a proposed fifth distribution of $10,125,000 to guaranty funds, but Ruthardt has not made the distribution because the United States has declined to waive its claims under 31 U.S.C. § 3713 with respect thereof.[9]

On May 14, 1999, Ruthardt filed a motion in the receivership court for approval of a liquidation plan reflecting the distribution priorities established by Mass. Gen. Laws ch. 175 § 180F and providing for denial of late filed claims.[10] She now requests a declaration from this court on these same points. In response, the United States asserts that all federal claims in this liquidation proceeding are entitled to first priority under 31 U.S.C. § 3713, and at least over guaranty fund claims. The United States further asserts that federal claims are not subject to Massachusetts' filing deadline.

## II. THE STATE DISTRIBUTION PRIORITIES (COUNT II)

The general federal priority statute, 31 U.S.C. § 3713, entitles federal claims to first priority when "a person indebted to the Government is insolvent and ... an act of bankruptcy is committed." 31 U.S.C. § 3713(a)(1)(A)(iii).

By contrast, the Massachusetts insurance liquidation statute, Mass. Gen. Laws ch. 175 § 180F, accords fourth priority to non-policyholder claims of the United States in insurance liquidation proceedings.[11] Under the state statute, a receiver may make payments to claimants in a particular priority class only if all claimants in higher priority classes have been paid in

---

**7.** By letter dated February 21, 1990, the United States Department of Labor filed claims for $566,736.48 against AMLICO and $5,739.63 against AMI under the Longshore and Harbor Workers' Compensation Act. By letters dated August 21, 1990 and December 4, 1991, the United States Interstate Commerce Commission filed claims against AMLICO totaling $140 for certificates of insurance filed with the Commission. The Environmental Protection Agency filed a claim dated March 6, 1990 in its capacity as a creditor of Stanadyne, Inc., an AMLICO-insured company. Finally, commencing in 1993, various Medicare contractors submitted 45 claims totaling $69,865 relating to Medicare payments for former AMLICO employees or retirees.

**8.** The guaranty funds have recovered from estate assets a total of $308,397,257 as of December 31, 1999. As of September 15, 2000, the funds reported approximately 13,-737 pending claims.

**9.** The United States granted conditional waivers of its claims under 31 U.S.C. § 3713 for the four previous distributions by the Receiver.

**10.** This motion is pending the outcome of the instant proceeding. In connection with the motion, the receivership court also submitted four questions of law to the full Supreme Judicial Court. *In the Matter of the Liquidation of American Mutual Liability Insurance Company*, 434 Mass. 272, 747 N.E.2d 1215 (Mass.2001).

**11.** Mass. Gen. Laws ch. 175 § 180F establishes the following order for distribution of claims:
(1) expenses of administration;
(2) claims of policyholders, beneficiaries and insureds and claims of insurance guaranty funds;
(3) claims for return premiums;
(4) claims of the federal government other than those included in class 2 or 3;
(5) compensation of employees;
(6) claims for taxes and debts due to any state or local government; and
(7) all other claims.

238

full or adequate funds have been set aside for such payments. Mass. Gen. Laws ch. 175 § 180F.

## A. The Preemption Landscape

■■■ Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law ordinarily will preempt a conflicting state law, even where congressional preemptive intent is implicit. *See Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 30–31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). However, the McCarran–Ferguson Act provides for a special anti-preemption exemption when state regulation of the "business of insurance" is involved.[12] By its terms, the Act operates to preserve a state statute from federal preemption where: (1) the state statute has been enacted "for the purpose of regulating the business of insurance;" (2) application of the relevant federal statute would "invalidate, impair, or supersede" that state statute; and (3) the federal statute does not itself "specifically relate to the business of insurance." 15 U.S.C. § 1012(b). As restated in *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), under the McCarran–Ferguson Act "state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise."

It is clear that 31 U.S.C. § 3713 operates to "invalidate, impair, or supersede" the distribution priorities established by Mass. Gen. Laws ch. 175 § 180F. *See* 15 U.S.C. § 1012(b). By according first priority to all claims of the United States, the federal priority statute necessarily conflicts with assignment of fourth priority to federal non-policyholder claims under the Massachusetts scheme. The United States does not dispute that the McCarran–Ferguson Act inquiry is satisfied in this regard.

The United States also concedes that the Supreme Court made clear in *Fabe* that 31 U.S.C. § 3713 does not "specifically relate[ ] to the business of insurance" for McCarran–Ferguson Act purposes. *See* 15 U.S.C. § 1012(b); *Fabe*, 508 U.S. at 501, 113 S.Ct. 2202.

Consequently, the priority issue in this case will hinge solely upon the remaining element of the McCarran–Ferguson Act inquiry: whether the priority scheme established by Mass. Gen. Laws ch. 175 § 180F, at least to the extent it subordinates federal non-policyholder claims to guaranty fund claims, was enacted "for the purpose of regulating the business of insurance." *See* 15 U.S.C. § 1012(b).

## B. Was the Massachusetts Priority Scheme Enacted "For the Purpose of Regulating the Business of Insurance"?

■■■ In addressing a similar conflict between 31 U.S.C. § 3713 and an Ohio statute conferring fifth priority upon federal non-policyholder claims in liquidation proceedings, the Supreme Court in *Fabe* reasoned that a state statute relating to the actual performance of an insurance contract should be considered enacted "for the purpose of regulating the business of insurance."[13] 508 U.S. at 503, 113 S.Ct. 2202. The Court found that a state statute

---

**12.** Congress enacted the McCarran–Ferguson Act for the specific purpose of recognizing the states' primary responsibility for regulating the insurance industry. *See SEC v. National Sec., Inc.*, 393 U.S. 453, 458, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

**13.** In so doing, the Court affirmed but did not consider itself overly restricted by the criteria for determining what constitutes the "business of insurance" set forth in *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).

designed, like the one before it, "to ensur[e] the payment of policyholders' claims despite the insurance company's intervening bankruptcy" is "integrally related to the performance of insurance contracts." *Id.*, at 504, 113 S.Ct. 2202. Therefore, in respect of the Ohio statute's assignment of a higher priority to policyholder claims over federal non-policyholder claims, the Court held all three conditions for McCarran–Ferguson Act preservation of the state law to have been met. *Id.*, at 508, 113 S.Ct. 2202.

At the same time, the Court took care to emphasize the critical character of the nexus with policyholder claims to its analysis. Thus, it declined to view the Ohio statute in its entirety as a law enacted "for the purpose of regulating the business of insurance" to the degree that particular provisions of the statute were not " 'aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly.' " *Id.*, at 501, 113 S.Ct. 2202 (quoting *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)).

This rejection of an "all-or-nothing approach" led the Court to a parsing of the Ohio statute's distribution priorities.[14] With respect to the Ohio statute's prioritization of administrative expenses over federal non-policyholder claims, the Court denied 31 U.S.C. § 3713 preemptive effect, finding the preference "reasonably necessary to further the goal of protecting policyholders." [15] 508 U.S. at 509, 113 S.Ct. 2202. But the Court refused to read the McCarran–Ferguson Act as similarly exempting from federal preemption the Ohio statute's prioritization of the claims of employees and general creditors. Acknowledging that "every preference accorded to the creditors of an insolvent insurer ultimately may redound to the benefit of policyholders by enhancing the reliability of the insurance company," the Court nevertheless found such a connection to be "too tenuous" to escape preemption. *Id.*

Thus, under *Fabe*, I may consider the distribution priorities under Mass. Gen. Laws ch. 175 § 180F to have been enacted "for the purpose of regulating the business of insurance"—and hence, exempt from federal preemption—only insofar as they are aimed with some precision at protecting or regulating policyholders.

The United States contends that Massachusetts' prioritization of guaranty fund claims over federal non-policyholder claims does not function to protect policyholders because it "permits the enormous claims of state insurance guaranty funds to compete as claims of equal rank with the claims of policyholders (including the federal government) for the assets of a failed insurance company, by allowing the claims of the guaranty funds to share in the same creditor class as policyholders." By so doing, the argument goes, the distribution priority "virtually ensures that policyholders will *not* receive payment on their claims against an insolvent insurer," because policyholders will receive far smaller distributions than if the guaranty funds occupied a lower priority class. Thus, the United States concludes, at least Massachusetts' prioritization of · guaranty fund claims over federal non-policyholder claims ought to be preempted by the federal pri-

---

**14.** The Ohio statute ranked federal claims behind administrative expenses, employee wage claims, policyholder and guaranty fund claims, and general creditor claims. 508 U.S. at 497 n. 2, 113 S.Ct. 2202.

**15.** Without payment of such expenses, the Court reasoned, "liquidation could not even commence." 508 U.S. at 509, 113 S.Ct. 2202.

ority statute.[16]

The United States raised the same argument unsuccessfully in *Boozell v. United States*, 979 F.Supp. 670 (N.D.Ill.1997), where it challenged the Illinois Insurance Liquidation Law's distribution priorities.[17] 979 F.Supp. at 678. The district court there held that guaranty funds are, by their very nature, "designed to protect policyholders of an insolvent insurer" because they are obligated to pay the claims of policyholders of insolvent insurers, who are then deemed to have assigned their rights of recovery to such funds.

The contentions of the United States can be put in perspective by focusing on the way in which MIIF, the primary guaranty fund in Massachusetts, is designed to operate. MIIF is required to pay all Massachusetts claims arising out of and within the coverage of relevant policies issued by an insurer which becomes insolvent. Mass. Gen. Laws ch. 175D, § 1(2). MIIF stands in the shoes of the policyholders who recover from the MIIF. These policyholders are deemed to have assigned their rights under the policy to the fund to the extent of their recovery. Mass. Gen. Laws ch. 175D § 8(1). In recovering from an insolvent insurer's estate, MIFF then assumes a priority equal to that which policyholders who have recovered from the fund would have enjoyed in its absence. Mass. Gen. Laws ch. 175D § 8(2). And in doing so, MIIF recovers only to the extent the policy holders it has paid could.

Under this regime, guaranty funds benefit certain policyholders by expediting the resolution and payment of claims. The funds begin paying claims immediately after an insolvency and continue doing so even after applicable time bars have run. By contrast, a state appointed receiver generally cannot distribute any estate assets until the identity and amount of all claims are known.

Guaranty funds further benefit certain policyholders by providing greater recoveries than would otherwise have been available from estate distributions in liquidation proceedings. Regardless of the extent of an insolvent insurer's assets, the funds pay each covered claim up to the lesser of policy limits or a $300,000 dollar cap (again excepting workers' compensation claims, which are not capped). By contrast, the Receiver estimates that in the particular liquidation proceeding at issue here, the insolvent companies' assets on their own would have been sufficient only to reimburse workers' compensation policyholders partially (albeit substantially), and other policyholders not at all. It is only because of guaranty funds that almost all workers' compensation claims have been paid in full, and other claimants reimbursed up to statutory limits (typically $300,000).

Put in this perspective, the contention of the United States that guaranty fund claims create new competition with policyholder claims is specious. In the absence of guaranty funds, those policyholder

---

**16.** I note that *Fabe* did not specifically address the question of guaranty fund claims, despite the fact that the Ohio statute in question also accorded such claims equal status to policyholder claims. *See Fabe*, 508 U.S. at 497 n. 2, 113 S.Ct. 2202. On remand, the trial court struck down the statute in its entirety, concluding that the portions of the statute preempted by the Supreme Court's decision in *Fabe* could not be severed from the remain-

der of the Ohio priority scheme. *Duryee v. Dept. of Treasury*, No. 77–1205 (S.D.Ohio Aug. 15, 1995).

**17.** The Illinois Liquidation Law assigns sixth priority to non-tax federal claims against insolvent insurers. It assigned fourth priority to claims by policyholders and guaranty funds. 979 F.Supp. at 677–78.

claims that such funds currently reimburse would remain directly in the competitive mix, potentially reducing *pro tanto* the available assets of the estate. The guaranty funds thus benefit policyholders, even if the funds' priority status in liquidation proceedings bestows a somewhat indirect benefit to policyholders who have passed their claims onto the guaranty funds. In this regard, I consider guaranty funds to occupy a critically different position vis-à-vis policyholder interests than do, for example, the general creditors of an insolvent insurer. Guaranty funds themselves are integral to the general "goal of protecting policyholders." They do so with precision.[18] Consequently, I am not prepared to dismiss their priority status under Mass. Gen. Laws ch. 175 § 180F as not "reasonably necessary to further" that goal.

I find no meaningful question that guaranty funds are designed to protect and benefit certain policyholders of an insolvent insurer by affording prompter and potentially larger payments on claims than would be possible if those policyholders were required to wait for a receiver's distributions.[19] Therefore, I find that the priority accorded the claims of guaranty funds over federal non-policyholder claims in insurance liquidation proceedings under Massachusetts law to be a provision enacted "for the purpose of regulating the business of insurance," and accordingly conclude it is saved by the McCarran–Ferguson Act from preemption under the general federal priority statute, 31 U.S.C. § 3713.

## III. THE STATE FILING DEADLINE (COUNT I)

The Receiver also requests a declaration that federal claims are subject to the March 9, 1990 deadline set by the state receivership court pursuant to Mass. Gen. Laws ch. 175 § 180F. The United States does not contest that certain of its claims were brought after this March 9, 1990 deadline. However, it does contend, first, that federal claims generally are not bound by state rules of limitation, *see United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), and, second, that 31 U.S.C. § 3713 operates to preempt Massachusetts law in this regard, because the state filing deadline was not enacted "for the purpose of regulating the business of insurance." *See* 15 U.S.C. § 1012(b).

### A. State Impairment of Federal Claims

■ The United States argues that the imposition of any time limitation on federal claims is prohibited by the principle that the United States is not "bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940) (internal citations omitted). The Court in *Summerlin* explained that when the Unit-

---

18. I note that the Ohio statute in dispute before the Court in *Fabe* also accords the claims of guaranty funds equal priority with those of policyholders. Although concededly the question was not framed as such, the Supreme Court in *Fabe* made no suggestion that this prioritization over federal non-policyholder claims goes beyond the "purpose of regulating the business of insurance," as it found to be the case with respect to employee wage and general creditor claims. Indeed, *Fabe* necessarily recognized the role played by guaranty funds as benefitting policyholders when it upheld the first priority to administrative costs, a category which included "the reasonable expenses of a guaranty association ... in handling claims." *See Fabe*, 508 U.S. at 497 n. 2, 113 S.Ct. 2202.

19. I note, moreover, they achieve that result without obtaining greater rights in liquidation proceedings than other policyholders.

ed States asserts a claim in its sovereign capacity, "it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." 310 U.S. at 417, 60 S.Ct. 1019 (internal citation omitted).

The general principle expressed in *Summerlin* is well-established. *See, e.g., Bresson v. Commissioner of Internal Revenue*, 213 F.3d 1173, 1175–77 (9th Cir.2000) (a valid federal claim cannot be "cut off" by a state statute of limitations, so long as acquired before the limitations period has run); *see also Brown v. Coleman*, 318 Md. 56, 566 A.2d 1091 (Md.1989) (federal priority cannot be superseded or impaired by state law). However, its preemptive effect here (through the general federal priority statute, 31 U.S.C. § 3713) cannot overcome the particular niche for state authority carved out by the McCarran–Ferguson Act, which was enacted by Congress five years after *Summerlin* was decided. Thus, despite the enduring general vitality of the *Summerlin* principle, the United States will be deemed to have chosen to become subject to the state filing deadline in this case to the degree the McCarran–Ferguson Act protects such rules.

**B.  Was the Massachusetts Filing Deadline Enacted "For the Purpose of Regulating the Business of Insurance"?**

█ It bears re-emphasizing that *Fabe* holds a state law is deemed to have been enacted "for the purpose of regulating the business of insurance" under the McCarran–Ferguson Act only to the extent that it regulates or protects policyholders. 508

U.S. at 508, 509 n. 8, 113 S.Ct. 2202. Thus, I must determine if Massachusetts' filing deadline in insurance liquidation proceedings in fact serves to regulate or protect policyholders.

█ The First Circuit, shortly after *Fabe* was handed down, specifically considered whether such a state deadline was enacted to regulate the business of insurance. *Garcia*, 4 F.3d at 60–62. At issue in *Garcia* was a Puerto Rico law permitting the Insurance Commissioner to set a claims filing deadline, and to delay payment of any late claims until all timely-filed claims "have been paid in full with interest." *Id.* at 60–61 (internal quotation omitted). One year after the deadline established for an insurance insolvency,[20] the IRS filed a claim representing federal tax liens on the insolvent company's assets, and sought priority payment pursuant to the federal priority statute. *Id.*

Then Chief Judge Breyer concluded that the federal priority statute *did* preempt the state filing deadline, reasoning that the state provision "cannot be said to directly 'regulate[ ] policyholders,' for it is neither directed at, nor necessary for, the protection of policyholders, as the *[Fabe ]* Court required." *Id.* at 62. He explained that the state filing deadline was not *directed at* the protection of policyholders, insofar as it "helps policyholders only to the extent that (and in the same way as) it helps all creditors."[21] *Id.* He added that the deadline was not *necessary for* the protection of policyholders, noting that without it, "liquidation would still prove manageable. At worst, the trustee's job would become slightly more difficult," in contrast to the payment of administrative expenses, rec-

---

**20.** *Garcia* involved the liquidation of a health maintenance organization. 4 F.3d at 58.

**21.** "That is to say, by penalizing late-filers, the Commonwealth provision may bring

about more speedy, orderly liquidation proceedings, thereby (perhaps) reducing the risks (and costs) of extending credit to the company." *Id.*

ognized by *Fabe* as "necessary to protect policyholders, ... because [otherwise], liquidation might never occur." *Id.* On the whole, the *Garcia* court found the state filing deadline in that case to provide policyholders with "only indirect, speculative benefit of the kind that the *Fabe* Court found far too tenuous to prevent pre-emption." *Id.*

*Garcia* has not met with universal acceptance. The District Court in *Boozell*, for example, "expressly" rejected *Garcia* and its narrow reading of *Fabe*, 979 F.Supp. at 678. Other circuits have politely questioned whether *Fabe* in fact mandates narrow parsing of state insurance statutes, of the sort engaged in by the court in *Garcia*, to determine which provisions specifically protect policyholders. *See, e.g., Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585, 592 (5th Cir.1998) (acknowledging that, under *Fabe*, "a statute may require parsing to determine the extent of its pre-emptive power under the McCarran–Ferguson Act," but noting that "the Court stopped short of directing that this approach be taken in every case," such that, *"Fabe*'s holding in this respect is simply unclear."); *see also Stephens v. American Int'l Ins. Co.*, 66 F.3d 41, 44–45 (2d Cir.1995) (anti-arbitration provision contained in Kentucky Liquidation Act upheld as "simply one piece" of Act's overall purpose of "assuring that

an insolvent insurer will be liquidated in an orderly and predictable manner.")[22]

A focused critique was presented by the court in *Clark v. Blue Cross Blue Shield of West Virginia*, 203 W.Va. 690, 510 S.E.2d 764 (1998), which specifically rejected *Garcia's* logic that a state filing deadline in insurance liquidation proceedings does not, considered on its own merits, qualify as protecting policyholders for McCarran–Ferguson Act purposes. The state court in *Clark* held that a West Virginia filing deadline on claims against insolvent insurance companies is not preempted by the federal priority statute, because such a deadline assures that policyholder claims "will be handled in a timely and orderly fashion," and because it "reduc[es] the administrative costs of liquidation" (thereby preserving more estate assets to be distributed to policyholders on their claims). 510 S.E.2d at 784–85.[23]

The record before me suggests the *Garcia* panel may have understated the disruption which an open-ended opportunity for federal government claims has upon insurance liquidation proceedings. Absent a deadline for claims applicable to all creditors, a receiver will not be willing to make a final distribution because the prospect of unanticipated claims would render impossible a final determination.[24] The result would be to require known policyholder creditors to wait indefinitely for reimbursement.[25]

---

**22.** The Tenth Circuit, in upholding a Utah statute staying proceedings against an insolvent insurer against preemption by the Federal Arbitration Act, distinguished *Garcia* without questioning it by observing that the filing deadline at issue in *Garcia* "would have applicability in any form of debt liquidation proceeding and it is not in any way peculiar to the business of insurance." *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277, 1281 n. 5 (10th Cir.1998).

**23.** In concluding its analysis, the *Clark* court observed that the *Garcia* decision "has not

been followed by any other court ... [and] has· been criticized as interpreting *Fabe* too narrowly." *Id.*, at 785.

**24.** Ruthardt notes that if she distributes assets upon approval of a receivership court, and later filed claims of the United States are deemed valid, she might face personal liability under 31 U.S.C. § 3713(b).

**25.** Ruthardt acknowledges that timely and orderly distribution of funds will benefit all creditors in a liquidation proceeding (not just

Since *Garcia*, the First Circuit itself has recognized the practical need for a claims filing date in insurance company liquidation proceedings, and acknowledged that a bar date serves the "strong interest in rapidly resolving and quantifying all claims" against an insolvent insurer. *See Mercado–Boneta v. Administracion del Fondo de Compensacion al Paciente*, 125 F.3d 9, 17 (1st Cir.1997). The court there explained:

> If the Insurance Commissioner were required to accept claims against the liquidated PCFA indefinitely that would clearly contravene the legitimate legislative goal of finality, and could well delay distribution of funds to any claimant. In addition to the administrative difficulties involved in permitting the continued filing of claims against PCFA, due to the limited availability of funds, known claimants might be required to await the filing of future claims before they could collect on their own. Absent a claims bar date, neither the affairs of PCFA nor the interests of pending claims could be finalized.... We recognize ... the legislature's legitimate purpose in setting a claims bar date, and find that it was reasonable and necessary under the circumstances.

*Id.*, at 17–18.

Ruthardt urges me to further consider that the First Circuit has not cited *Garcia* in three subsequent decisions addressing either insurer receivership bar dates or the McCarran–Ferguson Act (citing *Mercado–Boneta*, 125 F.3d at 17–18, *United States v. Rhode Island Insurers Insolvency Fund*, 80 F.3d 616, 619 (1st Cir.1996),

and *Villafane–Neriz v. FDIC*, 75 F.3d 727, 735 (1st Cir.1996)). The suggestion apparently is that *Garcia* has been abandoned *sub silentio*.

To be sure, there are distinctions between *Garcia* and subsequent cases. The state court in *Clark*, for example, placed emphasis on the fact that the West Virginia deadline did not serve to prohibit late-filed federal claims absolutely, but merely subordinated such claims in distribution priority to timely-filed claims. 510 S.E.2d at 778. By contrast, Mass. Gen. Laws ch. 175 § 180F appears to contemplate an absolute bar against late-filed claims.[26] *Mercado–Boneta*, to take another example, involved the application of a claims filing deadline to a private party, rather than to the federal government. 125 F.3d 9. Neither the federal priority statute nor the applicability of the McCarran–Ferguson Act were at issue in that case.

Such distinctions, however, do not seem to make a meaningful difference. There is a compelling argument for the proposition that benefits are accorded policyholders by a state filing deadline in liquidation proceedings. In particular, *Garcia* seems to have been insufficiently sensitive to the fact that late-filed federal *policyholder* claims may substantively, and rather directly, interfere with the timely and orderly distribution of funds to general policyholder creditors.

■ Nevertheless, because *Garcia* remains controlling law in this circuit, I am bound by its holding. Under any fair reading of *Garcia*, I am obligated to find that the Massachusetts filing deadline in

---

policyholders), but contends that the primary benefit will accrue to policyholders, insofar as the vast majority of claims against an insolvent insurer's estate are made by policyholders and guaranty funds under statutory assignments of policyholder rights.

26. The United States notes that while Mass. Gen. Laws ch. 175 § 180F does not explicitly state that late-filed claims are invalidated, the Complaint and its attachments indicate that such claims are not processed by the receiver.

insurance liquidation proceedings was not enacted "for the purpose of regulating the business of insurance," and as such is preempted by the federal priority statute, 31 U.S.C. § 3713. It is the prerogative of the Court of Appeals and not the District Court to overrule precedent established by an appellate panel. *Cf. United States v. Hatter,* 532 U.S. 557, 121 S.Ct. 1782, 1790, 149 L.Ed.2d 820 (2001). Indeed, it is apparently the First Circuit *en banc,* rather than simply another First Circuit panel, which has that prerogative with respect to *Garcia. United States v. Roth Chhien,* 2001 WL 1097766, 266 F.3d 1, 8 (1st Cir. 2001) (holding "a prior panel decision inviolate absent either the occurrence of a controlling intervening event (e.g., a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling), or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course"). Lacking the authority to reject *Garcia,* I must apply it and give judgment on Count I to the United States.

## IV. MOTION TO INTERVENE

As noted, *see* note 1, *supra,* certain state insurance guaranty funds and associations (the "Guaranty Funds")[27] have moved to intervene in this proceeding in further defense of Mass. Gen. Laws ch. 175 § 180F against federal preemption. The Guaranty funds seek essentially the same declaration sought by the Receiver: that (1) the Guaranty Funds' claims to the assets of the Companies' estates are entitled to priority over non-policyholder federal claims, and (2) any federal claims to such assets are subject to the March 9, 1990 deadline set by the state receivership court. (Guaranty Funds' Compl. ¶¶ 1–2.)

## A. Intervention as of Right

Intervention as of right is governed by Fed.R.Civ.P. 24(a), which provides that:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

To satisfy the requirements of Rule 24(a)(2), a party must therefore (1) make a timely application; (2) demonstrate an interest relating to the property or transaction which is the subject of the action; (3) show that disposition of the action threatens to impair or impede its ability to protect that interest; and (4) show that existing parties inadequately represent its interest. *Public Service Co. of New Hampshire v. Patch,* 136 F.3d 197, 204 (1st Cir.1998). The First Circuit has emphasized that in the evaluation of asserted claims to intervention as of right, these four elements ought to "be read not discretely, but together, and always in keeping with a commonsense view of the overall litigation." *Id.* (citation omitted). At the same time, all four elements need to be met: "failure to satisfy any one of them dooms intervention." *Id.*

In this case, the United States does not challenge the timeliness of the Guaranty

---

**27.** These are guaranty funds and associations from Alabama, California, Connecticut, the District of Columbia, Illinois, Louisiana, Maine, Massachusetts, Missouri, Nebraska, Nevada, New Hampshire, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, and Virginia.

Funds' motion to intervene.[28] Similarly clear is the Guaranty Funds' interest in the subject matter of the action, as well as the potential impairment of their ability to protect that interest. With claims exceeding $225 million in the American Mutual estate alone, the Guaranty Funds have precisely the sort of *direct* interest in the distribution of the Companies' assets that is required. *See id.,* 205–06; *Conservation Law Foundation of New England, Inc. v. Mosbacher,* 966 F.2d 39, 42 (1st Cir.1992). And given that the Companies' assets are insufficient to satisfy every creditor, the potential that the federal priority statute preempts the Massachusetts distribution scheme necessarily will impact the Guaranty Funds' recovery in the liquidation proceeding.[29]

■■■■■■ Whether the Guaranty Funds have a right to intervene hinges, therefore, on the fourth element of Rule 24(a)(2): the adequacy of representation by existing parties. The Supreme Court has said that would-be intervenors need only make a minimal showing in this regard, and only to the effect that representation *may be* inadequate (not that it actually is). *Trbovich v. United Mine Workers,* 404 U.S.

528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (cited in *Maine v. Director, United States Fish and Wildlife Service,* 262 F.3d 13 (1st Cir.2001)). At the same time, that showing must include "some tangible basis to support a claim of purported inadequacy." *Patch,* 136 F.3d, at 207. Furthermore, this "burden of persuasion is ratcheted upward" when a private party wishes to intervene to defend a public act which the relevant governmental body is itself defending. *Id.; Maine,* 262 F.3d at 18–20.

Nevertheless, in keeping with its "commonsense" approach to intervention, the First Circuit has suggested some grounds upon which a court might possibly question the adequacy of such a governmental defense, particularly in the regulatory context, vis-à-vis private interests. None of those grounds are applicable here. The Guaranty Funds were not previously engaged in an adversary relationship with the Commissioner regarding the distribution scheme in insurance insolvency proceedings. *See id.,* at 20–21. Nor is there any significant sense in which the interests of the Commissioner and the Guaranty Funds currently diverge. *See id.* It may

---

**28.** The Receiver's Complaint was filed on November 22, 2000 and the Guaranty Funds sought intervention on February 2, 2001. Not only is this delay minimal, but I note that the motion to intervene further satisfies the additional criteria the First Circuit has set forth for determining timeliness: (1) no prejudice will result to the existing parties because of the delay; (2) given the economic interests of the would-be intervenors, the possibility that they will suffer prejudice if not allowed to intervene merits consideration; and (3) there do not appear to be any unusual circumstances militating against intervention. *See Tutein v. Daley,* 43 F.Supp.2d 113, 126–27 (D.Mass.1999); *Culbreath v. Dukakis,* 630 F.2d 15, 20–24 (1st Cir.1980).

**29.** In this connection, the United States suggests that the Guaranty Funds will suffer no adverse economic impact from a judgment

that the Massachusetts distribution scheme is preempted, insofar as any failure to recover from the Companies' estates will be compensated for by assessments on member insurers. I find this argument too conditional for purposes of the Rule 24(a) inquiry. It overlooks, moreover, the degree to which fuller reliance on such assessments would affect functioning of the Guaranty Funds, and certainly does not account for the vigor with which the Guaranty Funds have pressed their case here. It merits emphasis that this analysis in no way draws on the Guaranty Funds' further contention that my decision in this action will have a *stare decisis* effect upon all other pending and future insurer insolvency proceedings. The judgments of this court are not binding in other jurisdictions; they serve as no more than persuasive authority to other courts that may look to them for guidance.

be true that the Commissioner has less personal economic interest in the outcome of this action, but her defense of Massachusetts' distribution scheme has been well developed and vigorous. Not only is it the case that Mass. Gen. Laws ch. 175 § 180F benefits Massachusetts policyholders generally, but the Commissioner has a personal stake in timely and orderly liquidation proceedings. And in fact, the Commissioner has proved "ready, willing, and able to vigorously defend" the Massachusetts law. *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir.1982). This full-scale defense, coupled with the Guaranty Funds' participation as amici, has rendered the Funds unable to identify any legal argument or evidence that has been kept from this court by virtue of their exclusion as parties. *See Mass. Food Assoc. v. Mass. Alcoholic Beverages Control Comm.*, 197 F.3d 560, 567 (1st Cir.1999).

The Guaranty Funds urge one last basis for a finding of inadequacy. They suggest that the Commissioner might decide not to appeal from an adverse judgment, whereas they certainly would want such an appeal to go forward. The Guaranty funds bootstrap inadequacy of representation as emerging from that potential scenario. If such a scenario were to develop, however, the Guaranty Funds could seek to intervene, under Rule 24(a)(2), at that stage. *See id.*, at 568; *see also Daggett v. Comm. on Governmental Ethics and Election Practices*, 172 F.3d 104, 112 (1st Cir.1999); *Americans United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir.1990); *Smuck v. Hobson*, 408 F.2d 175 (D.C.Cir.1969); 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1909, at 345 & n.38 (1986). This opportunity renders the Guaranty Funds' potential future harm remediable.

I cannot find any past or foreseeable basis to deem the Commissioner's defense of the Massachusetts distribution scheme inadequate, vis-à-vis the Guaranty Funds' interests. Consequently, the motion for intervention as of right will be denied without prejudice to resubmittal in light of the appellate posture of these proceedings.

**B. Permissive Intervention**

■■■ Even where intervention as of right is not recognized, permissive intervention may be granted, at the discretion of the court, where (1) the application to intervene is timely; (2) the applicant's claim and the main action share a common question of law or fact; and (3) intervention would not result in undue delay or prejudice to the original parties. Fed. R.Civ.P. 24(b). Given the adequacy of the Commissioner's representation in this case, however, I am disinclined to permit the intervention. The fact that the Commissioner's potential refusal to appeal an adverse judgment does not, according to the caselaw, necessarily foreclose the Guaranty Funds ability to take on such appeal *at that stage* further convinces me that there is no need to permit intervention at the present time.

Thus, the motion for permissive intervention is DENIED.

**V. CONCLUSION**

For the reasons set forth more fully above, I DENY the Guaranty Funds' motion for intervention, and GRANT the Receiver's motion for summary judgment only as to Count II.[30] Accordingly, I direct

---

**30.** I find *Garcia* bars judgment for the Receiver on Count I, the filing deadline issue, and I find Count III moot. Count III of the Com-

plaint sought relief under § 706(1) of the Administrative Procedures Act ("APA"), which requires a reviewing court to "compel agency

that judgment be entered declaring that the Receiver may pay the claims of insurance guaranty funds on behalf of policyholders, in accordance with Mass. Gen. Laws ch. 175 § 180F, prior to non-policyholder claims of the United States.

## *JUDGMENT*

In accordance with the Memorandum and Order issued September 27, 2001, Denying the Guaranty Funds' Motion for intervention, and Granting the Receivers Motion for Summary Judgment only as to Count II, and finding judgment for the Receiver on Count I is barred and Count III is moot, it is hereby ORDERED, ADJUDGED AND DECREED:

**Judgment is entered declaring that the Receiver may pay the claims of insurance guaranty funds on behalf of policyholders, in accordance with Mass. Gen. Laws ch. 175 § 180F, prior to non-policyholder claims of the United States.**

action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Receiver claims that the Department of Justice "unreasonably delayed" acting on her request that the United States assent or conditionally waive its claims under 31 U.S.C. § 3713 to the proposed fifth "early access" distribution to the guaranty funds. The complaint sought a judgment ordering the United States to act on the Commissioner's request. The United States moved to dismiss Count III on the ground that its "decision not to consent to the conditional waiver is not reviewable" under the APA; the Receiver acknowledges that Count III of the complaint is moot in any event because the United States through this litigation has denied her request.